# EXHIBIT "1"

1  F. Bari Nejadpour, SBN 216925
   Law offices of L.A. Law Inc.
2  A Professional Law Corporation
3  8383 Wilshire Blvd. #649
   Beverly Hills, CA 90211
4  Tel: 310-954-9595
   Fax: 213-632-5299
5

6              Attorney for: Mansour H. Barghi

7       SUPERIOR COURT OF THE STATE OF CALIFORNIA
8            FOR THE COUNTY OF LOS ANGELES

9   MANSOUR-HOSSEIN BARGHI,              )   Case No:  LC106244
10                                       )
                Plaintiff,               )
11                                       )   **PLAINTIFF's TRIAL BRIEF**
                                         )
12           Vs.                         )
                                         )   Dept: W
13                                       )   Trial Date:  March 11,  2020
                                         )   Time: 9:30am
14  KASRA BARGHI, BARGHI REAL ESTATE     )
15  INVESTMENTS, LLC, JANE I. UN, DIMLUX,)
    LLC And DOES 1 THROUGH 10, INCLUSIVE.)
16              Defendants               )
17  (AND RELATED CROSS-ACTIONS)          )
                                         )
18  _____ )

19
20   **TO THE COURT AND ALL PARTIES AND THEIR ATTORNEY OF RECORD:**

21   Plaintiff, MANSOUR-HOSSEIN BARGHI hereby files his Trial Brief:
22

23   Dated: February 26, 2020
24

25                          L.A. LAW, INC.
26
27                          By:_____
28                          F. BARI NEJADPOUR, ESQ
                            Attorney for Plaintiff

A.       **STATEMENT OF FACTS**

1. **The Quiet Title Action**

Defendant, Kasra Barghi, (hereinafter "KASRA") is Plaintiff's only living son. KASRA was born on June 1, 1988 and, even in KASRA'S adult life, Plaintiff cared for, clothed, fed, housed, and financially supported him. During the first half of 2017, in part due to the death of Plaintiff's other son, the relationship between Plaintiff and KASRA deteriorated, resulting in KASRA engaging in conduct injurious to Plaintiff. Such conduct made it necessary to obtain a Preliminary Injunction and to file the lawsuit at bar. Plaintiff contends that KASRA conspired with Defendants JANE I. UN (hereinafter "JANE") and DIMLUX, LLC (hereinafter "DIMLUX") to fraudulently deprive him of two parcels of real property on which are located single family residences in Woodland Hills, California: 5246 Campo Road (hereinafter "Campo") and 4880 Winnetka Avenue (hereinafter "Winnetka") respectively.

On February 12, 2013, when KASRA was 25 years old, Plaintiff purchased the Winnetka property through a real estate agent/broker, Danny Rodriguez. On April 20, 2013, Plaintiff purchased the Campo property, again through Danny Rodriguez. He bought the Campo property for cash and mortgaged the Winnetka property.

The history of the two purchases is as follows: On July 5, 2012, Plaintiff opened a bank account at Wells Fargo under the name Mansour-Hossein Barghi dba BARGHI INVESTMENTS. (Please see Exhibit "A-1 – A-6") Plaintiff funded this account with $1,000,000.00. KASRA convinced Plaintiff that in order to protect his real estate assets from any potential personal liability and potential creditor claims, placing his real property into a

1  Limited Liability Company (LLC) would be advisable. KASRA formed a Limited Liability

2  Company in Nevada, and called it "BARGHI REAL ESTATE INVESTMENTS, LLC"

3  (hereinafter "BREI") purportedly for Plaintiff, and on his behalf. Unbeknownst to Plaintiff,

4  KASRA secretly formed BREI in his name alone. KASRA is the sole managing member and he

5  left Plaintiff's name off the documents forming the company. Plaintiff, MANSOUR-HOSSEIN

6  BARGHI, purchased the Winnetka property in his name alone and subsequently transferred the

7  title to BREI, all the while believing he was transferring title to his real estate into a limited

8  liability company he owned in order to shield the property from any potential personal creditor

9  lawsuits and to protect his valuable assets from any exposure to personal liability. *The Campo*

10 *property was purchased by BREI, however, the only name which appears on any of the escrow*

11 *documents is MANSOUR-HOSSEIN BARGHI.* He signed the escrow papers as "President" of

12 BARGHI REAL ESTATE INVESTMENTS, LLC. It is undisputed that Plaintiff, and his

13 broker/agent Danny Rodriguez, were the only people, on the Buyer side of the transaction, who

14 had anything to do with the purchase of the properties. Danny Rodriguez will testify at the trial of

15 this matter about the purchase of both properties and the source of funds for such purchases.

16 Moreover, as Plaintiff's designated expert in the field of real estate sales, Mr .Rodriguez will

17 provide an opinion concerning the value of the two respective properties at the time of the transfer

18 to DIMLUX. Additionally, Mr. Rodriguez will testify concerning the $500,000.00 loan to

19 DIMLUX secured by the Campo property and the subsequent foreclosure of the Campo property

20 when JANE and DIMLUX failed to pay back the loaned money. He will offer his opinion as to

21 why the Plaintiff thought he owned BREI and how the Defendants stole Plaintiff's properties out

22 from under him.

1    Contrary to KASRA's unverified Cross-Complaint, the source of funds for the

2    purchase of both properties was Plaintiff.  Moreover, the only bank accounts from which money

3    was taken for the down payment on the Winnetka property, and the cash purchase of the Campo

4    property, belonged to Plaintiff.  Even the BARGHI REAL ESTATE INVESTMENTS, LLC

5    account at Wells Fargo Bank belonged to Plaintiff.  (Please see Exhibit "A-7 – A-12")  Although

6    KASRA was an authorized signor on the Wells Fargo accounts, it was Plaintiff's social security

7    number, 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, which was associated with both accounts.  KASRA's social security

8    number is nowhere to be found on any of the accounts.

9

10   Plaintiff's social security number was attached to the purchase of both properties, and,

11   for tax purposes, only Plaintiff was liable for property taxes on both properties, even when BREI

12   held title to the Campo and Winnetka properties.  Moreover, Plaintiff was, and is, the sole

13   mortgagee on the Freedom Mortgage loan for the purchase of the Winnetka property.  This never

14   changed even when DIMLUX took title to the Winnetka property.

15

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.  The Statute of Frauds

California Civil Code Section 1624 provides, in part, as follows:  (a) The following

contracts are invalid, unless, they…are in writing…

(3) An agreement for the …sale of real property… ·

If the agreement between KASRA and DIMLUX is considered one for the sale of the

Winnetka and Campo properties, the transaction fails in that a written contract with specific terms

for the sale of the properties does not exist.  The one page "Agreement" which purportedly

1  constitutes the business agreement concerning the properties, calls for the sale of the properties at

2  the sole discretion of DIMLUX. ( Please see Exhibit "B").    Therefore, the intent was never to

3  *loan* money to KASRA.  Rather, the intent was to pay to him a total of $450,000 in exchange for

4

5  ownership of the Campo and Winnetka properties. "Collateral" is not for sale, unless the

6  borrower defaults on the loan.

7

8          Prior to the "Agreement" and the transfer of title to the properties to DIMLUX,

9  KASRA owed JANE a total of approximately $100,000.  JANE gave KASRA $350,000 more

10  from $500,000 borrowed from M&A EQUITIES.  Based on the "Agreement", and JANE's

11  deposition testimony, the following facts make this clear:

12

13      1.        The "Agreement" calls for the sale of the properties, and all money derived from

14          the sale of the properties goes to DIMLUX. (Exhibit "B")

15

16      2.        In exchange for KASRA transferring title to the properties to DIMLUX, pursuant

17          to the "Agreement", BREI is entitled to $500,000 to pay for BREI' s "'personal expenses."

18          (Exhibit "B")

19

20      3.        The amount of money given "will be determined at such time decision is made by

21          KASRA that he no longer needs personal funding." (Exhibit "B")

22

23      4.        JANE testified at her deposition that KASRA was paid a total of  $350,000 from

24          the $500,000 that DIMLUX borrowed from M&A EQUITIES . (Deposition of UN page

25          89 , line 11-15.)

26

27          In July, 2017, at a time when the relationship between Plaintiff and KASRA had

28  deteriorated completely, KASRA conspired with Defendant  JANE, on behalf of her company

1   DIMLUX, to transfer the two properties from BREI to DIMLUX.   Defendants JANE and

2   DIMLUX, attempted to mortgage the properties for their financial gain, on several occasions just

3   after the filing of the instant lawsuit, knowing full well that Plaintiff's Quiet Title lawsuit has

4   merit.  Plaintiff and his counsel intervened when information concerning the attempt to place a

5   second mortgage on the Winnetka property was mailed to Plaintiff.

6

7       DIMLUX successfully borrowed  Five Hundred Thousand ($500,000) Dollars from

8   Cross-Defendant M&A EQUITIES, LLC  (M&A).  Such loan was secured by the Campo

9   Property.  The unfortunate result of that situation was that DIMLUX defaulted on the loan and

10  M&A foreclosed.  The Campo Property was sold at public auction on August 30, 2019,  Thus, the

11  unlawful transfer of the Campo Property from KASRA to DIMLUX, by and through JANE,

12  resulted in the unwanted, and otherwise unnecessary, sale of the Campo property, which

13  represented approximately half of Plaintiff's life savings.   Nobody but the Plaintiff was interested

14  in preserving the property to ensure that the rightful owner would end up with the house.  This, of

15  course, is another fact providing circumstantial evidence that JANE is complicit in KASRA's

16  scheme to steal the properties and quickly borrow money against them.

17

18      On July 24, 2017, KASRA transferred both the Winnetka and Campo properties to

19  DIMLUX.  KASRA hand wrote on the two deeds "convey to secure a debt" .  The transfer of the

20  properties to DIMLUX, was pursuant to Revenue and Taxation Code Section 11921. (Please see

21  Exhibit "C")  California Revenue and Taxation Code Section 11921 provides that a real estate

22  transaction is tax exempt and free from the requirement that legal consideration must be paid for

23  the transfer of title when the title is transferred to secure a debt.  There is absolutely no evidence

24  that BREI owed a debt to DIMLUX or JANE.

1    JANE, a licensed bail bond agent with several bail offices, gave deposition testimony

2    indicating that she personally loaned money to KASRA on several occasions, in various amounts,

3    prior to the transfer of the two properties to DIMLUX.  Her testimony is that she always paid

4    KASRA in cash and that she did not keep a record of the amount she loaned to KASRA.  She

5    estimated that the amount was close to $100,000.

6

7    While it does not make any sense that, with a debt of $100,000, the owner of real

8    property would give away $2,000,000 worth of real property so that he could borrow another

9    $350,000 (JANE deposition testimony) *without any possibility to get the properties back,* JANE

10    would have this court believe such is true.  In fact, JANE testified in deposition that the transfer

11    of the properties to DIMLUX was to secure a past and future debt.   JANE testified that Exhibit

12    "B", the "Agreement", governs the terms of the agreement for the transfer of the two properties to

13    DIMLUX.   Rather than an agreement to sell real property, the agreement treats the transfer of the

14    properties as an investor agreement in which DILMUX has the sole decision making authority

15    regarding when, and for what price, the properties may be sold.

16

17    Most importantly, the aforesaid agreement provides for the properties to be sold at

18    DIMLUX discretion, *with none of the proceeds of sale going to BREI.*  Additionally, the

19    agreement is between BREI, and KASRA BARGHI as an individual, on the one hand, and

20    DIMLUX, LLC on the other hand.  JANE loaned the money to KASRA, not DIMLUX

21    Additionally, KASRA borrowed the money, not BREI..

22

23    The so called "Agreement" is neither an agreement for the sale of the properties,

24    nor is it an agreement for a loan secured by real property.  As a security agreement, the transfer to

25    DIMLUX fails in that KASRA never borrowed money from DIMLUX; *he borrowed money from*

1  *JANE.* It was therefore impossible for DIMLUX to secure a debt of KASRA'S when the owner of

2  the properties, BREI, never borrowed any money whatsoever and given that DIMLUX never

3
4  loaned any money. In addition, there is no provision in the agreement for the return of title to the

5  properties in the event KASRA pays the money back.   In fact, the Agreement does not contain a

6  provision directing KASRA to pay any money back.

7
8       As a purchase agreement for two parcels of real property, the transfer fails for lack

9  of legal consideration. No consideration was exchanged in support of the transfer.  There is no

10  evidence whatsoever of any debt from BARGHI REAL ESTATE INVESTMENTS, LLC to

11  DIMLUX.   Therefore, the transfer is not one for collateral with which to secure a debt. Insofar as

12
13  the transfer of title to the two properties is unsupported by consideration, DIMLUX, is not a

14  "bona-fide purchaser for value" and title should revert back to BREI. Insofar as Plaintiff placed

15  title to both properties into BREI, based on KASRA's fraud, the title should be ordered back to

16  Plaintiff.

17
18       Additionally, the "Agreement" fails to satisfy the requirements of the statute of

19  frauds, codified in California Civil Code section 1624. It is neither a contract for the sale of real

20  property; nor is it a contract for repayment of a loan, secured by real property.  Such contracts

21  must be in writing, with specific terms.

22
23       JANE testified  in Deposition that the loan money went to KASRA in various

24  amounts when he needed money. For example, she testified that a sum of $60,000 went to an

25  attorney who represented KASRA on a criminal matter. Additionally, according to JANE,

26  another large sum went to KASRA's former attorney of record in the case at bar.   Additionally,

27
28

1  JANE testified that she bailed KASRA out of jail on from 7 to 10 occasions, and that he did not

2  pay what he owed for bailing him out of jail. Yet, she continued to "loan" him money.

3

4         . The "Agreement" states that DIMLUX will "provide $500,000 in financing to

5  BREI to pay BREI personal expenses, and credit to an ongoing real estate project...."  The

6  Agreement further provides that the amount of money up to $500,000 "will be determined at such

7  time decision is made by KASRA that he no longer needs personal funding."  In exchange for the

8  agreement to provide KASRA with up to $500,000, BREI was required to transfer the two

9

10  respective deeds to DIMLUX. (Exhibit "C") The final baffling paragraph of the agreement

11  provides as follows: "In order to accommodate Mr. KASRA's immediate personal funding needs

12  the net equity will be determined at such time DIMLUX sells property in an orderly fashion...."

13  The Agreement is important because it provides further evidence that the transfer of real property

14  from BREI to DIMLUX was unsupported by legal consideration and that the transfer did not even

15

16  serve the purpose as collateral for a debt, the stated purpose of the Agreement  This is so for the

17  following reasons:

18

19  1.  There is no provision which would allow BREI to take back title to the properties in the event

20  BREI paid back the credit amount extended to it.

21

22  2.  The Agreement provides for personal funding to KASRA, however, the property belonged to

23  BREI.

24

25  3.  The stated purpose of the agreement is to provide financing to BREI to pay its "personal

26  expenses."  The problem is that BREI, by definition, cannot have "personal expenses."

27

28

4.   The agreement provides that the amount of credit given to BREI will be determined at such time KASRA no longer needs personal financing.  The financing is given to BREI, and not to KASRA.

5.   The agreement purports to give DIMLUX two parcels of real property in Woodland Hills, which, together, are worth approximately $2,000,000.00, in exchange for a maximum amount of $500,000 to be given to KASRA at his request.  In fact, KASRA received $350,000 from the money JANE borrowed.

6.   The Wells Fargo Bank records exhibit that MANSOUR BARGHI is "President" of BREI while KASRA is given the title "Senior Loan Officer".  KASRA signed the one page agreement as "Manager" of BREI.  The transfer was effected without the knowledge and consent of the Plaintiff, MANSOUR-HOSSEIN  BARGHI, and he was completely unaware of KASRA'S $100,000 debt to JANE, and most certainly KASRA's new debt of $350,000 to JANE secured by the Campo property.

7.   The deeds by which DIMLUX took title indicate that the transfer took place to secure a debt to DIMLUX.  The agreement does not acknowledge the collateral aspect of the agreement; rather, the agreement calls for sale of the two properties. The agreement provides that "the net equity will be determined at such time DIMLUX sells property in an orderly fashion...." There is no definition for "orderly fashion"; nor is there any provision for when, or for what price, the properties shall be sold. Coincidently, the agreement was executed on July 24, 2017, the very day the properties were transferred to DIMLUX.

8.    At all times, MANSOUR-HOSSEIN BARGHI was the sole mortgagee on a $680,000 loan from Freedom Mortgage for the purchase of the Winnetka Property.  When title was transferred to DIMLUX, Freedom Mortgage remained the mortgagor and MANSOUR-HOSSEIN BARGHI remained the mortgagee.  DIMLUX does not have any legal responsibility for payment of such mortgage. .

## 2.  ARGUMENT

On February 26, 2018, Plaintiff filed his First Amended Complaint.  On April 13, 2018 default was taken against KASRA, DIMLUX, and BREI.  Plaintiff stipulated to set aside the default against DIMLUX, however, KASRA and BREI remain in default.

The parties herein seem to agree that the source of funds for the purchase of the two properties has everything to do with who owned the properties prior to the transfer of title to DIMLUX. It follows that if the following assertions are true, title to Campo and Winnetka should be restored to the Plaintiff:

1. Plaintiff's money was used to purchase the Campo and Winnetka properties,

2. Plaintiff's belief that he was the owner of BREI is reasonable

3. KASRA transferred the title to the two properties to DIMLUX without Plaintiff's knowledge or consent.

1    4. The discrepancy between the value of the two properties and the amount of money given to

2    KASRA should put a reasonable person on notice that KASRA was not the true owner.

3

4        The records from Wells Fargo Bank are instructive.  The records were produced

5    pursuant to a subpoena for records.  There are two accounts relevant to the case at bar. The first is

6    the Mansour Barghi dba Barghi Investments account which was established on 7/5/2012 with a

7    deposit of one million dollars.  The account number associated with this account is 7194993601.

8

9    The Business Account Application (Exhibit "A")  for this account indicates the Plaintiff is the

10   "sole owner" of this account and KASRA is an authorized signor.  The other account is the BREI

11   account.  The account number associated with this account is 6147324161.  The Plaintiff,

12   MANSOUR-HOSSEIN BARGHI is listed as "President" of BREI.  KASRA is the "Senior Loan

13

14   Officer".  Additionally, the Business Account Application , at page 6 of 6, places  MANSOUR

15   BARGHI's name under the heading "Owner/Key Individual" and the word "President" appears

16   under the heading "Position/Title".  The bank records indicate that the owner of the account is

17   BREI.

18

19        On 8/8/2012, Plaintiff instructed KASRA to withdraw the sum of $1,046,000 from

20   the Barghi Investments account and deposit such amount into the BREI account.  MANSOUR

21   HOSSEIN BARGHI's social security number is associated with the BREI account.  Additionally,

22   there is a tax identification number associated with the BREI account; this number also belongs to

23

24   MANSOUR-HOSSEIN BARGHI.    It was from the BREI account that the down payment for the

25   Winnetka property and the purchase price of the Campo property came.   The evidence will prove

26   conclusively that the funds which purchased both properties originated with Plaintiff.

27   Additionally, from April, 2013 through July 24, 2017, Plaintiff alone paid all the expenses

28

1  involved with home ownership, including, but not limited to utilities, improvements, brush

2  clearance, trash pickup and repairs.

3

4          3.    **CONCLUSION**

5

6        The two parcels of real property were stolen by the Defendants in the case at bar. Once the

7  properties were stolen, they remained stolen and everything which took place after title was

8  transferred to DIMLUX took place on stolen property. The loan to DIMLUX provides

9  circumstantial evidence of the Defendants' knowledge that the property was not KASRA's to

10  transfer. If the property were Kasra's wouldn't a reasonable person ask why Kasra does not

11  obtain the loan himself. Why does he need to transfer properties to Dimlux so that he may

12  increase his $100,000 debt to JANE UN by $350,000? To do otherwise was too risky; his father

13  would surely find out what he had done. To believe JANE *did not* either participate with

14  KASRA, or, at least know that KASRA unlawfully manipulated his way into ownership of the

15  Campo and Winnetka properties is folly.

16

17        JANE UN is neither naïve nor inexperienced. She testified in deposition that she met

18  KASRA and MANSOUR BARGHI at an investor meeting. She also had a history with KASRA,

19  both as a "trusted" friend, and professionally in her Bail Bond business. She loaned large sums of

20  money to KASRA, and she had bailed him out of jail on from 7 to 10 occasions, posting large

21  sums of money for his release from jail. After Plaintiff filed his Complaint, DIMLUX, through

22  JANE obtained a loan secured by stolen property before the inevitable injunction was obtained.

23  For all the reasons addressed herein, if JANE was not a willing participant in the theft, the

24  circumstantial evidence shows that she knew KASRA could not be a property owner.

Another "red flag" aspect of this transaction is that there was no thought given to why MANSOUR-HOSSEIN BARGHI was personally liable for the Freedom Mortgage loan when KASRA represented to JANE that he owned the properties and had authority to transfer them. JANE knew, or should have known, that KASRA, a 25 year old ne'er do well, who allegedly owns a restaurant at which his father works and two houses, "Campo" and "Winnetka" respectively, did not legitimately hold title to the two properties. She described, in her deposition testimony, another KASRA: This KASRA did not have a bank account, any identification, a place to sleep, or clothes on his back. When it was reported to her that KASRA was sleeping on the grass in front of the jail, (having been arrested for a violation of the restraining order his grandmother had after KASRA pushed her to the ground) knowing that KASRA could not go to the Winnetka house where his grandmother lived, she did not ask, why he did not move into the Campo house. She knew that he could not; he did not own the properties. By accepting title to the properties, JANE received stolen property.

Dated: February 26, 2020

Respectfully Submitted,

L..A.  LAW, INC.

F. BARINEJADPOUR, Esq.

# Exhibit "A"

# Business Account Application

**WELLS FARGO**

| | |
|---|---|
| Bank Name: | Store Name: |
| WELLS FARGO BANK, N.A. | TARZANA |
| Banker Name: | Officer/Portfolio Number: / Date: |
| ANTO SHAKELIAN | A1931 / 07/05/2012 |
| Banker Phone: / Store Number: | Banker AU: / Banker MAC: |
| 818/344-8190 / 04550 | 0000912 / E2189-011 |

To help the government fight the funding of terrorism and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify, and record information that identifies each person (individuals and businesses) who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## New Account Information

[X] New Deposit Account(s) Only          [ ] New Deposit Account(s) and Business Credit Card

Account 1 Product Name:

Wells Fargo Business High Yield Savings

| CCID | Product: | Account Number: | Opening Deposit: | Type of Funds: |
|---|---|---|---|---|
| 114 | DDA | 7194993601 | $1,000,000.00 | INTX |

New Account Kit:

Printed

## Related Customer Information

| | |
|---|---|
| Customer 1 Name: | Account Relationship: |
| MANSOUR BARGHI | Sole Owner |
| Enterprise Customer Number (ECN): | |
| 209089512016710 | |
| Customer 2 Name: | Account Relationship: |
| BARGHI INVESTMENTS | Associated Party |
| Enterprise Customer Number (ECN): | |
| 455472112025410 | |





BBG2307 (5-12 SVP)          2W02-000494866664-01

Business Account Application

Customer 3 Name:

Account Relationship

Enterprise Customer Number (ECN):
567716621938217

## Checking/Savings Statement Mailing Information

| Name(s) and Information Listed on Statement: | Statement Mailing Address |  |
|---|---|---|
| MANSOUR BARGHI | 19245 BURBANK BLVD UNIT 12 |  |
|  | Address Line 2: |  |
| DBA BARGHI INVESTMENTS |  |  |
|  | City | State |
|  | TARZANA | CA |
|  | ZIP Postal Code | Country |
|  | 91356-2593 | US |



Business Account Application

## Customer 1 Information

Customer Name:
BARGHI INVESTMENTS

Account Relationship:
Associated Party

Taxpayer Identification Number (TIN):          TIN Type:
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                                    SSN

Business Type:
Sole Proprietor

Business Sub-Type/Tax Classification:                    Non-Profit:
                                                         No

Date Originally Established:   Current Ownership Since:   Number of Employees:
01/01/2000                                               1

Annual Gross Sales:           Year Sales Reported:   Fiscal Year End:
$500,000.00                   12/31/2016

Primary Financial Institution:   Number of Locations:
                                 1

Primary State 1:     Primary State 2:     Primary State 3:

Primary Country 1:   Primary Country 2:   Primary Country 3:

Industry:
Other Services (except Public Administration)

Description of Business:
investments

Major Suppliers/Customers:

Mailing Address:
BLVD UNIT 12

Address Line 2:

Address Line 3

City:                                                    State:
TARZANA                                                  CA

ZIP/Postal Code:                                         Country:
91356-2593                                               US

Business Phone:
818/205-7335                        Fax:

Cellular Phone:                     Pager:

e-Mail Address:

Website:

Sales Market:
LOCAL

## Bank Use Only

Name/Entity Verification:            Address Verification:                BACC Reference Number:
Other Agreement                                                          612EAC2939187

Document Filing Number/Description:   Filing Country   Filing State     Filing Date:     Expiration Date:
not needed surname                    US              CA

Country of Registration:    State of Registration:    International Transactions:          Check Reporting:
US                          CA                                                            NEG RECORD-APPROVED

Customer 1 Name:                                       Internet Gambling Business?:
BARGHI INVESTMENTS                                     No







Business Account Application

## Sole Proprietor 1 Information

| | | | |
|---|---|---|---|
| **Customer Name:** MANSOUR BARGHI | | | 18245 BURBANK BLVD UNIT 12 |
| **Position/Title:** OTHER | **Date of Birth:** 04/30/1955 | **Enterprise Customer Number (ECN):** 209089512016710 | Address Line 2. |
| **Taxpayer Identification Number (TIN):** 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 | **TIN Type.** SSN | | Address Line 3. |
| **Primary ID Type** PASP | **Primary ID Description** E12522887 | | **City:** TARZANA | **State** CA. |
| **Primary ID St/Ctry/Prov:** IR. | **Primary ID Issue Date.** 10/12/2007 | **Primary ID Expiration Date:** 09/12/2012 | **ZIP/Postal Code.** 91356-2593 | **Country** US |
| **Secondary ID Type** OTHR DC | **Secondary ID Description.** WF DC | | **Directional Address** *(Document when no physical residence, business or alternate street address.)* |
| **Secondary ID State/Country:** | **Secondary ID Issue Date** | **Secondary ID Expiration Date.** | |
| **Country of Citizenship.** US | | | **Check Reporting:** RECORD |

## Certificate of Authority

Each person who signs the "Certified/Agreed To" section of this Application certifies that:

A. The Customer's use of any Bank deposit account, product or service will confirm the Customer's receipt of, and agreement to be bound by, the Bank's applicable fee and information schedule and account agreement that includes the Arbitration Agreement under which any dispute between the Customer and the Bank relating to the Customer's use of any Bank deposit account, product or service will be decided in an arbitration proceeding before a neutral arbitrator as described in the Arbitration Agreement and not by a jury or court trial.

B. Each person who signs the "Certified/Agreed To" section of this Application or whose name, any applicable title and specimen signature appear in the "Authorized Signers - Signature Capture" section of this Application is authorized on such terms as the Bank may require to

(1. Enter into, modify, terminate and otherwise in any manner act with respect to accounts at the Bank and agreements with the Bank or its affiliates for accounts and or services offered by the Bank or its affiliates (other than letters of credit or loan agreements);

(2. Authorize (by signing or otherwise) the payment of Items from the Customer's account(s) listed on this Business Account Application (including without limitation any Item payable to (a) the individual order of the person who authorized the Item or (b) the Bank or any other person for the benefit of the person who authorized the Item) and the endorsement of Deposited Items for deposit, cashing or collection (see the Bank's applicable account agreement for the definitions of "Item" and "Deposited Item");

(3. Give instructions to the Bank in writing (whether the instructions include the manual signature or a signature that purports to be the facsimile or other mechanical signature may have been made or affixed), orally, by telephone or by any electronic means in regard to any Item and the transaction of any business relating to the Customer's account(s), agreements or services, and the Customer shall indemnify and hold the Bank harmless for acting in accordance with such instructions; and

(4) Delegate the person's authority to another person(s) or revoke such delegation, in a separate signed writing delivered to the Bank.

C. If a code must be communicated to the Bank in order to authorize an Item, and the code is communicated, the Item will be binding on the Customer regardless of who communicated the code.

D. Each transaction described in this Certificate of Authority conducted by or on behalf of the Customer prior to delivery of this Certificate is in all respects ratified.

E. If the Customer is a tribal government or tribal government agency, the Customer waives sovereign immunity from suit with respect to the Customer's use of any Bank account, product or service referred to in this Certificate.

F. The information provided in this Application is correct and complete, each person who signs the "Certified/Agreed To" section of this Application and each person whose name appears in the "Authorized Signers-Signature Capture" section of this Application holds any position indicated, and the signature appearing opposite the person's name is authentic.

G. The Customer has approved this Certificate of Authority or granted each person who signs the "Certified/Agreed To" section of this Application the authority to do so on the Customer's behalf by:

(1) resolution, agreement or other legally sufficient action of the governing body of the Customer, if the Customer is not a trust or a sole proprietor;

(2) the signature of each of the Customer's trustee(s), if the Customer is a trust; or

(3) the signature of the Customer, if the Customer is a sole proprietor.







Certified/Agreed To

| Owner/Key Individual I Name | Position/Title: |
|---|---|
| MANSOUR BARGHI | OTHER |

Owner/Key Individual I Signature

[X] Submit manually
[ ] Signature not required

Date
07/05/2012

## Request for Taxpayer Identification Number and Certification

(Substitute Form W-9)

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. UNLESS I HAVE CHECKED ONE OF THE BOXES BELOW, I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding (does not apply to real estate transactions, mortgage interest paid, the acquisition or abandonment of secured property, contributions to an Individual Retirement Arrangement (IRA), and payment other than interest and dividends).

3. I am a U.S. citizen or other U.S. person.    [ ] I am subject to backup withholding    [ ] I am exempt from backup withholding

Note: The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

| Tax Responsible Customer Name | Taxpayer Identification Number (TIN): |
|---|---|
| MANSOUR BARGHI | 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 |

TIN Certification Signature:

[X] Submit manually
[ ] Signature not required

Date

## Authorized Signers - Certificate of Authority Cross Reference

Existing Customers - New Accounts

For use when persons identified as authorized signers on the customer's existing Business Account Application/Certificate of Authority are identical to the persons designated as authorized signers for the accounts listed on this Business Account Application. Please refer to the Business Account Application/Certificate of Authority currently on file for the following account.

Existing Account Number to be Cross Referenced:
5613765956

## Authorized Signers - Signature Capture

| Authorized Signer I Name | Position/Title: |
|---|---|
| KASRA H BARGHI | SR LOAN OFFICER |

Authorized Signer 1 Signature

[X] Submit manually
[ ] Signature not required

Date:
07/05/2012

Business Account Application    OTHER

Authorized Signer 2 Name
MANSOUR

Authorized Signer 2 Signature

☒ Submit manually
☐ Signature not required

Date
07/05/2012



# Business Account Application



| Bank Name: | Store Name: |
|---|---|
| WELLS FARGO BANK, N.A. | TARZANA |

| Banker Name: | Officer/Portfolio Number: | Date: |
|---|---|---|
| ANTO SHAKELIAN | A1931 | 07/31/2012 |

| Banker Phone: | Store Number: | Banker AU: | Banker MAC: |
|---|---|---|---|
| 818/344-8190 | 04550 | 0000912 | E2180-011 |

To help the government fight the funding of terrorism and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify, and record information that identifies each person (individuals and businesses) who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## New Account Information

[×] New Deposit Account(s) Only ☐ New Deposit Account(s) and Business Credit Card

Account 1 Product Name:
Platinum Business Services Package

| CCID: | Product: | Account Number: | Opening Deposit: | Type of Funds: |
|---|---|---|---|---|
| 114 | DDA | 7195016204 | $100.00 | CKS |

Account 2 Product Name:
Wells Fargo Business High Yield Savings

| CCID: | Product: | Account Number: | Opening Deposit: | Type of Funds: |
|---|---|---|---|---|
| 114 | DDA | 6147324161 | $1,000,047.00 | CKS |

New Account Kit:
Printed

## Related Customer Information

| Customer 1 Name: | Account Relationship: |
|---|---|
| BARGHI REAL ESTATE INVESTMENTS LLC | Sole Owner |

Enterprise Customer Number (ECN):
107305751854715

| Customer 2 Name: | Account Relationship: |
|---|---|
| MANSOUR BARGHI | Signer |

Enterprise Customer Number (ECN):
209089512016710



2W02-000498621326-01

Business Account Application

Customer 3 Name:
KASPA H BARGHI

Account Relationship:
Signer

Enterprise Customer Number (ECN):
567716621938217

## Checking/Savings Statement Mailing Information

Name(s) and Information Listed on Statement:
BARGHI REAL ESTATE INVESTMENTS LLC

Statement Mailing Address:
18245 BURBANK BLVD UNIT 112

Address Line 2:

City:
TARZANA

State:
CA

ZIP/Postal Code:
91356-2503

Country:
US



## Customer 1 Information

Business Account Application

| Customer Name: | Street Address: |
|---|---|
| BARGHI REAL ESTATE INVESTMENTS LLC | 18245 BURBANK BLVD UNIT 112 |

| Account Relationship: | Address Line 2: |
|---|---|
| Sole Owner | |

| Taxpayer Identification Number (TIN): | TIN Type: | Address Line 3: |
|---|---|---|
| 46-0603019 | EIN | |

| Business Type: | City: | State: |
|---|---|---|
| Limited Liability Company | TARZANA | CA |

| Business Sub-Type/Tax Classification: | Non-Profit: | ZIP/Postal Code: | Country: |
|---|---|---|---|
| | No | 91356-2593 | US |

| Date Originally Established: | Current Ownership Since: | Number of Employees: | Business Phone: | Fax: |
|---|---|---|---|---|
| 07/18/2012 | | 2 | 818/200-6611 | |

| Annual Gross Sales: | Year Sales Reported: | Fiscal Year End: | Cellular Phone: | Pager: |
|---|---|---|---|---|
| $3,000,000.00 | 07/18/2012 | | | |

| Primary Financial Institution: | Number of Locations: | e-Mail Address: |
|---|---|---|
| | 1 | |

| Primary State 1: | Primary State 2: | Primary State 3: | Website: |
|---|---|---|---|
| | | | |

| Primary Country 1: | Primary Country 2: | Primary Country 3: | Sales Market: |
|---|---|---|---|
| | | | LOCAL |

| Industry: |
|---|
| Real Estate, Rental and Leasing |

| Description of Business: |
|---|
| real estate |

| Major Suppliers/Customers: |
|---|
| |

## Bank Use Only

| Name/Entity Verification: | Address Verification: | BACC Reference Number: |
|---|---|---|
| Articles of Organization | | 612BAC1073213 |

| Document Filing Number/Description: | Filing Country: | Filing State: | Filing Date: | Expiration Date: |
|---|---|---|---|---|
| 2012049745802 | US | NV | 07/18/2012 | |

| Country of Registration: | State of Registration: | International Transactions: | Check Reporting: |
|---|---|---|---|
| US | NV | | NEG RECORD-APPROVED |

| Customer 1 Name: | Internet Gambling Business?: |
|---|---|
| BARGHI REAL ESTATE INVESTMENTS LLC | No |



A-9

Business Account Application

## Owner/Key Individual 1 Information

| Field | Value | Field | Value |
|---|---|---|---|
| Customer Name: | MANSOUR BARGHI | Residence Address: | 18245 BURBANK BLVD UNIT 12 |
| Position/Title: | PRESIDENT | Address Line 2: | |
| Date of Birth: | 04/30/1955 | | |
| Enterprise Customer Number (ECN): | 209089512016710 | | |
| Taxpayer Identification Number (TIN): | 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 | Address Line 3: | |
| TIN Type: | SSN | | |
| Primary ID Type: | PASP | Primary ID Description: E12522837 | |
| Primary ID St/Ctry/Prov: | IR | City: | TARZANA |
| Primary ID Issue Date: | 10/12/2007 | State: | CA |
| Primary ID Expiration Date: | 09/12/2012 | ZIP/Postal Code: | 91356-2593 |
| Secondary ID Type: | OTHER DC | Country: | US |
| Secondary ID Description: | WF DC | Check Reporting: | RECORD |
| Secondary ID State/Country: | | | |
| Secondary ID Issue Date: | | | |
| Secondary ID Expiration Date: | 07/01/2015 | | |
| Country of Citizenship: | US | | |



A-40

## Certificate of Authority

Each person who signs the "Certified/Agreed To" section of this Application certifies that:

A. The Customer's use of any Bank deposit account, product or service will confirm the Customer's receipt of, and agreement to be bound by, the Bank's applicable fee and information schedule and account agreement that includes the Arbitration Agreement under which any dispute between the Customer and the Bank relating to the Customer's use of any Bank deposit account, product or service will be decided in an arbitration proceeding before a neutral arbitrator as described in the Arbitration Agreement and not by a jury or court trial.

B. Each person who signs the "Certified/Agreed To" section of this Application or whose name, any applicable title and specimen signature appear in the "Authorized Signers - Signature Capture" section of this Application is authorized on such terms as the Bank may require to:

(1) Enter into, modify, terminate and otherwise in any manner act with respect to accounts at the Bank and agreements with the Bank or its affiliates for accounts and/or services offered by the Bank or its affiliates (other than letters of credit or loan agreements);

(2) Authorize (by signing or otherwise) the payment of Items from the Customer's account(s) listed on this Business Account Application (including without limitation any Item payable to (a) the individual order of the person who authorized the Item or (b) the Bank or any other person for the benefit of the person who authorized the Item) and the endorsement of Deposited Items for deposit, cashing or collection (see the Bank's applicable account agreement for the definitions of 'Item' and 'Deposited Item');

(3) Give instructions to the Bank in writing (whether the instructions include the manual signature or a signature that purports to be the facsimile or other mechanical signature including a stamp of an Authorized Signer as the Customer's authorized signature without regard to when or by whom or by what means or in what ink color the signature may have been made or affixed), orally, by telephone or by any electronic means in regard to any Item and the transaction of any business relating to the Customer's account(s), agreements or services, and the Customer shall indemnify and hold the Bank harmless for acting in accordance with such instructions; and

(4) Delegate the person's authority to another person(s) or revoke such delegation, in a separate signed writing delivered to the Bank.

C. If a code must be communicated to the Bank in order to authorize an Item, and the code is communicated, the Item will be binding on the Customer regardless of who communicated the code.

D. Each transaction described in this Certificate of Authority conducted by or on behalf of the Customer prior to delivery of this Certificate is in all respects ratified.

E. If the Customer is a tribal government or tribal government agency, the Customer waives sovereign immunity from suit with respect to the Customer's use of any Bank account, product or service referred to in this Certificate.

F. The information provided in this Application is correct and complete, each person who signs the "Certified/Agreed To" section of this Application and each person whose name appears in the "Authorized Signers-Signature Capture" section of this Application holds any position indicated, and the signature appearing opposite the person's name is authentic.

G. The Customer has approved this Certificate of Authority or granted each person who signs the "Certified/Agreed To" section of this Application the authority to do so on the Customer's behalf by:

(1) resolution, agreement or other legally sufficient action of the governing body of the Customer, if the Customer is not a trust or a sole proprietor;

(2) the signature of each of the Customer's trustee(s), if the Customer is a trust; or

(3) the signature of the Customer, if the Customer is a sole proprietor.

## Certified/Agreed To

| Owner/Key Individual 1 Name | Position/Title: |
|---|---|
| MANSOUR BARGHI | PRESIDENT |

Owner/Key Individual 1 Signature

[X] Submit manually

[ ] Signature not required

Date:
07/31/2012



Business Account Application

## Request for Taxpayer Identification Number and Certification

(Substitute Form W-9)

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. UNLESS I HAVE CHECKED ONE OF THE BOXES BELOW, I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding (does not apply to real estate transactions, mortgage interest paid, the acquisition or abandonment of secured property, contributions to an Individual Retirement Arrangement (IRA), and payments other than interest and dividends).

3. I am a U.S. citizen or other U.S. person.          ☐ I am subject to backup withholding          ☐ I am exempt from backup withholding

**Note:** The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

| Tax Responsible Customer Name: | Taxpayer Identification Number (TIN): |
|---|---|
| BARGHI REAL ESTATE INVESTMENTS LLC | 146-0603019 |

TIN Certification Signature:

| | ☒ Submit manually | Date: |
|---|---|---|
| | ☐ Signature not required | |

## Authorized Signers - Signature Capture

| Authorized Signer 1 Name: | Position/Title: |
|---|---|
| MANSOUR BARGHI | PRESIDENT |

Authorized Signer 1 Signature

| | ☒ Submit manually | Date: |
|---|---|---|
| | ☐ Signature not required | 07/31/2012 |

| Authorized Signer 2 Name: | Position/Title: |
|---|---|
| KASRA H BARGHI | SR LOAN OFFICER |

Authorized Signer 2 Signature

| | ☒ Submit manually | Date: |
|---|---|---|
| | ☐ Signature not required | 07/31/2012 |



# Exhibit "B"

## BUSINESS AGREEMENT

This agreement made this 24th day of July, 2017 City Of Los Angeles, State Of California, United States of America.

### BETWEEN:

Dimlux LLC (DIM)

And

Barghi Real Estate Investments LLC/ Mr. Kasra H. Barghi (BREI)

DIM, will provide $500,000.00 in financing to BREI to pay for BREI personal expenses, and credit to an on-going real estate project of which DIM and it's affiliates are involved. Credit amount will be determined at such time decision is made by Kasra, that he no longer needs personal funding. Interest will be compounding at 10% annually

Disbursement will be paid in on an as needed basis

In exchange for the above credit facility, BREI will assign the ownership of the following property:
1. 5246 Campo Rd. Woodland Hills California 91364
2. 4390 Winnetka Ave. Woodland Hills California 91364

In order to accommodate Mr. Kasra's immediate personal funding needs the net equity will be determined at such time DIM sells property in an orderly fashion to maximize the potential property value

SIGNED AND WITNESSED this 24th day of July, 2017 in the City Of Los Angeles, State of California and Country of U.S.A. by:

Dimlux LLC y

Barghi Real Estate Investments LLC

Kasra H. Barghi- Manager

Kasra H. Barghi- Individual

Ex B.

# Exhibit "C"

Recording requested by
DIMLUX,LLC
650 S Grand Avenue
Los Angeles CA 90017

and when recorded, please return this deed
and tax statements to:
DIMLUX, LLC
650 S Grand Avenue
Los Angeles CA 90017
Parcel No. 216B-004-036

For recorder's use only

## California Grant Deed

[ ] This transfer is exempt from the documentary transfer tax /
[ ] The documentary transfer tax is $_____ Ø ✓_____ and is computed on:
    [ ] the full value of the interest in the property conveyed
    [ ] the full value less the value of liens of encumbrances remaining at the time of sale

The property is located in an [ ] unincorporated area. [X] the city of LOS ANGELES

For a valuable consideration, receipt of which is hereby acknowledged, Barghi Real Estate

Investments,LLC, a Nevada Limited Liability Company

hereby grant(s) to Dimlux , LLC, a California Limited Liability Company

✓ Convey to Secure a Debt R&T 11921

the following real property in the City of _____, County of Los Angeles
_____, state of California: Lot(s) 2255 of Tract No. 6170 In the City of Los Angeles,
County of Los Angeles, State of california, as per map recorded In Book 76 Page(s) 57 to 62 of maps
In the Office of the County Recorder of said County.

B. _____ ( Manager )

Date: 07/24/2017    Barghi  Real Estate Investments, LLC, a Nevada Limited

Date: _____    Liability Company

State of _____ )
County of _____ ) ss:    Kasra  Hossein  Barghi (Manager)

On _____, 19__, before me, _____, a notary public in and for said state
personally appeared _____, personally known to me (or proved to me based
upon satisfactory evidence) to be the person(s) whose name(s) are subscribed to the within instrument and
acknowledged that (s)he/they executed the same in his/her/their signature on the instrument the person(s) or entity
on behalf of which they acted, executed the instrument.

_____    See attached
Signature of Notary    NOTARY SEAL    acknowledgment

©Copyright 1996 - Do Not Copy Without the Express Written Permission of the Publisher

Recording requested by
DIMLUX,LLC
650 S Grand Avenue
Los Angeles CA 90017

and when recorded, please return this deed
and tax statements to:
DIMLUX, LLC
650 S Grand Avenue
Los Angeles CA 90017
Parcel No: 2175 -019-013

For recorder's use only

## California Grant Deed

[ ] This transfer is exempt from the documentary transfer tax
[ ] The documentary transfer tax is $ _____ 0 / _____ and is computed on:
  [ ] the full value of the interest in the property conveyed
  [ ] the full value less the value of liens of encumbrances remaining at the time of sale

The property is located in an [ ] unincorporated area, [X] the city of LOS ANGELES

For a valuable consideration, receipt of which is hereby acknowledged, Bargni Real Estate
Investments,LLC, a Nevada Limited Liability Company

hereby grant(s) to Dimux , LLC, a California Limited Liability Company

Convey to Secure a Debt R&T 11921

the following real property in the City of _____, County of Los Angeles
_____, state of California: Lot 2 of Tract No. 23575 in the City of Los Angeles,
County of Los Angeles, State of California, as per map recorded in Book 790 Page(s) 53 to 53
inclusive of maps,  in the Office of the County Recorder of said County.

Property more commonly known as : 4390 Winnetka Ave, Woodland Hills, CA 91364

Date: _____07/24/2017_____     B. K—— ( Manager )

Bargni Real Estate Investments, LLC, a Nevada Limited

Date: _____     Liability Company

State of _____ )
County of _____ ) ss:     Kasra Hossein Barghi ( Manager )

On _____, 19___ before me, _____,
personally appeared _____, _____, a notary public in and for said state
upon satisfactory evidence to be the person(s) whose name(s) are personally known to me (or proved to me based
acknowledged that (s)he/they executed the same in his/her/their signature on the instrument the person(s) or entity
on behalf of which they acted, executed the instrument.

See attached
acknowledgment

Signature of Notary _____     NOTARY SEAL

©Copyright 1995 - Do Not Copy Without the Express Written Permission of the Publisher